**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| HSIN HUANG CHANG | : | 3:19-CV-2024 (OAW) |
| *Plaintiff*, | : | |
| | : | |
| v. | : | |
| | : | |
| JENNY JN NAILS, INC. | : | |
| BURTIS NAIL INC | : | |
| JENNY GJ INC | : | |
| DAE EUN LEE | : | |
| *Defendants*. | : | JUNE 26, 2023 |

## RULING AND ORDER ON MOTION FOR DEFAULT JUDGMENT

Plaintiff Hsin Huang Chang ("Plaintiff") commenced this action on December 31, 2019 against Defendants Dae Eun Lee a/k/a Sarah Lee ("Defendant Lee") and three corporate entities, each of which Defendant Lee is alleged to control: Jenny JN Nails, Inc., Burtis Nail Inc., and Jenny GJ Inc. (the "Corporate Defendants") (together with Defendant Lee, "Defendants"). Plaintiff, a former employee of Defendants, alleges violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), and Connecticut[1] wage laws, Conn. Gen. Stat. § 31-58 *et seq.*[2] Plaintiff seeks damages to recover unpaid

---

[1] Plaintiff's complaint repeatedly references the "Pennsylvania Minimum Wage Act." Compl. ¶¶ 5, 47. At the default judgment hearing, Plaintiff confirmed that this was a mistake. Plaintiff is a New York resident who worked in Connecticut for the Connecticut-based Defendants. *Id.* ¶¶ 8–16; Pl.'s Aff. ¶ 2, ECF No. 100-6. Plaintiff's claims arise from his Connecticut work. Neither the complaint nor the default judgment motion contains any Pennsylvania allegations. Accordingly, the court considers the raised claims under only federal and Connecticut state law.

[2] To the extent that the complaint and the motion refer to the "Connecticut Minimum Wage Act" or "CMWA," the court notes that Connecticut statutes do not contemplate any such act. *See Williams v. Gen. Nutrition Centers, Inc.*, 326 Conn. 651, 657 (2017) (substituting "Connecticut wage laws" for district court's use of "Connecticut Minimum Wage Act," as the Supreme Court of Connecticut has concluded that "[o]ur General Statutes do not designate any of its provisions as comprising such an act"). The court will refer to Plaintiff's state-law wage and hour claims as arising under §§ 31-58 *et seq.* of the General Statutes of Connecticut.

minimum wages, overtime premium wages, liquated damages, prejudgment interest, and attorneys' fees.

On August 12, 2021, the court (*Hon. Sarah A. L. Merriam, J.*) granted defense counsel's motion to withdraw on behalf of all Defendants. ECF No. 55. After the Corporate Defendants failed to secure successor counsel, the court (*Hon. Alfred V. Covello, J.*) issued an entry of default against them on September 20, 2021. ECF No. 64. On January 26, 2022, the court (*Hon. Sarah A. L. Merriam, J.*)[3] issued an entry of default against Defendant Lee for her "longstanding history of failure to defend this action." ECF No. 79. The court then directed Plaintiff to file a motion for default judgment, which Plaintiff filed on March 14, 2022. ECF No. 82. That motion, however, was denied without prejudice as Plaintiff failed to provide an adequate evidentiary basis for the damages claimed. ECF No. 94. The court directed Plaintiff to include separate assessments of the hours worked for each corporate defendant. *Id.* at 8. The motion was denied without prejudice to renewal with updated figures. *Id.* In accordance with the court's order, Plaintiff filed the instant motion for default judgment. ECF No. 101. The undersigned, having received this case by transfer, held a hearing on the motion on March 13, 2023. Defendants did not attend the hearing. For the reasons stated herein, Plaintiff's motion for default judgment hereby is **<u>GRANTED</u>** in the amounts discussed below.

## I.    BACKGROUND

---

[3] To clarify this portion of the procedural history, Judge Merriam was a United States Magistrate Judge when Judge Covello referred to Her Honor the Motions to Withdraw and to Appoint Counsel. *See* ECF Nos. 50, 51. Judge Merriam became a United States District Judge on October 12, 2021, and the following day, this case was transferred to Her Honor. *See* ECF No. 69. Then, on September 28, 2022, Judge Merriam was elevated to the position of Judge of the Court of Appeals for the Second Circuit, and the present case was transferred to the undersigned on October 5, 2022. *See* ECF No. 103.

Review of the complaint and Plaintiff's documents in support of his motion for default judgment reveals the following undisputed facts:

Defendant Lee, through her control and ownership of the Corporate Defendants, operates two nail salons in Connecticut: Sarah Nail located at 99 Danbury Road in Ridgefield, and Burtis Nail located at 20 Burtis Avenue in New Canaan.  Compl. ¶¶ 8–17.  The Ridgefield location also has done business under the name of "Nails by Jenny."[4]  *Id.* ¶ 14.  Defendants hired Plaintiff to work as a nail worker at their two locations between 2015 and 2019.  *Id.* ¶ 31; Pl.'s Aff. ¶ 4, ECF No. 100-6.

Plaintiff worked at the Ridgefield location, Nails by Jenny, for just over six months from June 17, 2015, to January 3, 2016, and for another six months from April 21, 2016, to October 21, 2016.  *Id.* ¶ 4(a)–(b).  During this time, Plaintiff worked more than 60 hours per week.  *Id.* ¶ 11; Ex. 7, Spreadsheet Summary at 1, ECF No. 100-7.  Plaintiff was paid a flat rate of $80 per day for his work at Nails by Jenny.  Pl.'s Aff. ¶ 22.

In 2018, Plaintiff was employed by Defendants at Burtis Nail in New Canaan, for nine months between January 2, 2018, and September 18, 2018.[5]  *Id.* ¶¶ 4(c), 12.  During this time, Plaintiff worked an average of 60.55 hours per week.  *Id.* ¶ 16; Ex. 7, Spreadsheet Summary at 2, ECF No. 100-7.  Plaintiff was paid a flat rate of $90 per day for his work at Burtis Nail.  Pl.'s Aff. ¶ 23.  Plaintiff was paid for his work starting on January 4, despite having worked at Burtis Nail starting on January 2.  *Id.* ¶ 23.

---

[4] When referring to the Ridgefield location, the complaint uses the name "Nail by Jenny" while Plaintiff's affidavit in support of his motion for default judgment uses the name "Nails by Jenny."  *Compare* Compl. ¶¶ 14–16, *with* Pl.'s Aff. ¶ 4(a)(b). The court presumes that both terms refer to the same nail salon.

[5] Plaintiff's affidavit contains conflicting dates as to when he began work at Burtis Nail. For example, in Paragraph 4(c) he states that he began work for Burtis Nail on January 1, 2018, while in Paragraph 12 he indicates that he began work on January 2, 2018.  Pl.'s Aff. ¶¶ 4(c), 12. At the default judgment hearing, Plaintiff confirmed that he began working at Burtis Nail on January 2.

In 2019, Plaintiff returned to the Ridgefield location, which was then doing business as Sarah Nail, for four months between March 12, 2019, and July 21, 2019.[6]  *Id.* ¶¶ 4(d), 17, 19, 24.  During this time, Plaintiff worked an average of 68.80 hours per week.  *Id.* ¶ 19; Ex. 7, Spreadsheet Summary at 2, ECF No. 100-7.  Plaintiff was paid $100 per day from March 12, 2019, to June 30, 2019, Pl.'s Aff. ¶ 24, and $120 per day from July 1, 2019, to July 21, 2019, *id.* ¶¶ 24–25.

In addition to working in the nail salons, Plaintiff regularly would drive "all the workers from Flushing to and from the Nail Salons."  *Id.* ¶¶ 18, 26.  Plaintiff was paid $35 for each day that he drove the employees.  *Id.* ¶ 27.  He reports that he was not paid overtime for work over 40 hours per week.  He did not have fixed times for meals, nor was he allotted any interrupted break time.  *See id.* ¶¶ 20–21.  Plaintiff would be given fifteen to twenty minutes to eat, but he would have to end his break if any customers entered the salon.  *Id.* ¶ 21.  Throughout the course of his employment, Plaintiff was not given any paystubs documenting his weekly payments, *id.* ¶¶ 29, 38, and he was not compensated at any premium rate, such as time-and-a-half, for overtime.  *Id.* ¶ 37.

## II.    COLLECTIVE ACTION AND CLASS ACTION CLAIMS

Plaintiff initially brought his complaint as a collective action under the FLSA and a class action under state wage laws.  *See* Compl. ¶¶ 46–55.  Plaintiff did not move for class certification, but did move for conditional certification of a collective action under the FLSA.  ECF No. 18.  On September 28, 2021, the court (*Hon. Covello, J.*) granted

---

[6] Plaintiff's affidavit contains conflicting dates as to when he began work at Sarah Nail. For example, he states at Paragraphs 4(d), 17, and 19, that he began work for Sarah Nail on March 21, 2019.  Paragraph 24, however (and the Complaint, ¶ 7), indicates a start date of March 12, 2019.  Pl.'s Aff. ¶¶ 4(c), 12.  At the default judgment hearing, Plaintiff confirmed that he began working at Sarah Nail on March 12.

Plaintiff's request for conditional collective certification.    ECF No. 65.    The ruling established as the conditional class Defendants' "non-exempt nail/waxing workers and massage workers".    *Id.* at 8.    The court permitted Plaintiffs to disseminate notices to the potential opt-in plaintiffs informing them of their right to join this collective action.    *Id.*

Since the court's ruling on the conditional certification of the collective action, Plaintiff has not identified any similarly-situated individuals who have opted into the collective action.    *See Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010) (noting that after a court makes an initial determination to send notice to the potential opt-in plaintiffs, the court must determine whether the plaintiffs who have opted in are in fact "similarly situated" to the named plaintiffs).    At the default judgment hearing, Plaintiff indicated that he is abandoning his collective and class action claims, and that he would proceed on his motion for default judgment.    Accordingly, the collective and class action claims in the complaint hereby are **<u>DISMISSED</u>** as waived.

## III.    DISCUSSION

Plaintiff seeks a total default judgment against Defendants in the amount of $98,337.81.[7]    He calculates this figure from the backpay for minimum wage and overtime violations ($8,372.10), an award of liquidated damages under state law ($8,372.10), prejudgment interest ($3,523.64) and attorney's fees and costs ($78,069.97).

---

[7] In his original default judgment motion, Plaintiff sought a total default judgment of $130,232.03, which included $57,198.03 "for one set of wage and hour damages, one set of liquidated damages and prejudgment interest."  Mem. of Law at 16, ECF No. 101. After the default judgment hearing, he revised this portion of the damages calculation to seek only $19,777.62.  *See* ECF No. 110 at 3, ¶16.  However, the highlighted figure at the bottom of the chart in ECF No. 110-1 at 3 lists a claim of **$20,267.84** using different calculations of wage and hour violations, liquidated damages, and prejudgment interest than those in the body of the document.  Plaintiff also seeks $76,601.50 in attorneys' fees, plus $1,468.47 in costs, for a total of **$78,069.97.**  ECF No. 110 at 33–34.  Together, this amounts to an overall claim of **<u>$98,337.81</u>.**

a.  Default Judgment Standard

Rule 55 of the Federal Rules of Civil Procedure contemplates a two-step process for obtaining a default judgment against a defendant.  First, a plaintiff must obtain an entry of default through the Clerk of Court or, as here, through the court itself.  *See Beller & Keller v. Tyler*, 120 F.3d 21, 22 n.1 (2d Cir. 1997) (noting that district court has the power to exercise the "ministerial function" of issuing an entry of default under Rule 55(a)).  Second, the plaintiff must move the court for the issuance of the default judgment.

Upon the entry of default, a defendant admits every well pleaded allegation of the complaint, with the exception of damages.  *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992).  Damages usually must be established by the plaintiff in an evidentiary proceeding unless they are liquidated damages or susceptible of mathematical computation.  *Id.* (citing *Flaks v. Koegel,* 504 F.2d 702, 707 (2d Cir. 1974)).  "In the context of a motion for default judgment on FLSA and [state law] claims, 'the plaintiff's recollection and estimates of hours worked are presumed to be correct.'"  *Pena v. Super Economic One Way Supermarket Corp.*, No. 120CV03060MKBPK, 2021 WL 4755603, at *3 (E.D.N.Y. Sept. 8, 2021) (citing *Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012)), *R. & R. adopted*, No. 20CV3060MKBPK, 2021 WL 4398204 (E.D.N.Y. Sept. 25, 2021).  The court must consider whether a plaintiff has stated a claim for the requested relief.  If a plaintiff fails to state a claim, the court cannot enter default judgment irrespective of the defendant's failure to appear.  *See Pac. M. Int'l Corp.*, 888 F. Supp. 2d 385, 398 (S.D.N.Y 2012) (refusing to enter a default judgment on the plaintiff's claim for fraud because the "plaintiff fail[ed] to state a claim").

b.  Statute of Limitations

The limitations period for FLSA claims is two years, "except that a cause of action arising out of a willful violation may be commenced within three years."  29 U.S.C. § 255(a).  Plaintiff filed his complaint on December 31, 2019.  ECF No. 1.  Thus, presuming that Plaintiff has plausibly stated a claim for willful violation, his claims must have accrued on or after December 31, 2016.  At the default judgment hearing, Plaintiff admitted that any wage and hour claims that arose during the period in which he worked for Nails by Jenny falls outside the limitations period.  Plaintiff worked at Nails by Jenny between June 17, 2015, and January 3, 2016, and between April 21, 2016, and October 21, 2016. Because the periods of work occurred prior to December 31, 2016, any claims arising from Nails by Jenny are barred by the three-year limitation period under the FLSA.  The claims are also barred under Connecticut wage laws which carry a two-year statute of limitations.  Conn. Gen. Stat. § 52-596.  The remainder of Plaintiffs claims arise out of his work performed at Burtis Nail and Sarah Nail.  Because Plaintiff worked at each of those nail salons within two years prior to filing the complaint, those claims are within the limitations period under both the FLSA and state law.

c.  Liability Under Federal and State Law

The FLSA was enacted by Congress with the principal purpose of protecting "all covered workers from substandard wages and oppressive working hours[.]"  *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981).  To that end, the FLSA requires an employer to pay its employees a statutory minimum wage and a premium rate for hours worked above 40 hours per week.  29 U.S.C. §§ 206, 207.  Connecticut wage laws mirror the FLSA in providing similar wage and overtime guarantees.  *See* Conn. Gen. Stat. §§ 31-58(i); 31-76c.  To state a claim under either the federal or state law, a

plaintiff must have performed work for an "employer"[8] as an "employee."[9]  *Fuk Lin Pau v. Jian Le Chen*, No. 3:14CV841(JBA), 2015 WL 6386508, at *6 (D. Conn. Oct. 21, 2015). The FLSA further requires that the employee or employer be engaged in interstate commerce.  *Tony & Susan Alamo Found. v. Sec'y of Lab.*, 471 U.S. 290, 295 (1985).

Plaintiff has pled sufficient facts to establish claims under the FLSA and state wage laws.  Defendant Lee hired Plaintiff to work as a nail worker at the two nail salons.  Thus, Plaintiff was an "employee" within the meaning of both the FLSA and Connecticut law. *See Won v. Gel Factory, Corp.*, No. CV205269EKARL, 2022 WL 903121, at *4 (E.D.N.Y. Jan. 25, 2022) ("For the purpose of this default motion, Plaintiffs qualify as employee based on their allegation that they were employed as nail technicians from 2017 to 2020."), *R. & R. adopted*, No. 20-CV-5269(EK)(ARL), 2022 WL 903065 (E.D.N.Y. Mar. 28, 2022).  Defendants meet the definition of "employer" as Defendant Lee supervised and controlled Plaintiff's work schedule, his conditions of employment, determined the rate and method of payment, and ultimately fired him.  Compl. ¶¶ 17–21.  *See Irizarry v. Catsimatidis*, 722 F.3d 99, 105 (2d Cir. 2013) (noting the four factors for determining the economic reality of an employment relationship under the FLSA include the employer's power to (1) hire and fire employees; (2) supervise and control work schedules and conditions of employment; (3) determine the rate and method of payment, and (4) maintain employment records).

---

[8] The FLSA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee."  29 U.S.C. § 203(d).  Under state law, an employer is "any owner or person . . . acting . . . in the interest of an employer in relationship to employees[.]"  Conn. Gen. Stat. § 31-58(d).

[9] An "employee" is defined under the FLSA as "any individual employed by an employer."  29 U.S.C. § 203(e)(1).  The CMWA defines "employee" to include "any individual employed or permitted to work by an employer."  Conn. Gen. Stat. § 31-58(e).

Although the complaint states in a conclusory fashion that Defendants are engaged in interstate commerce, Compl. ¶¶ 9–16, the court finds it reasonable to presume interstate activity where the nail salon uses products within the flow of interstate commerce, and where Plaintiff regularly drove nail salon workers across state lines between New York and Connecticut.  Thus, Plaintiff himself directly was engaged in interstate commerce.  The court finds that the allegations are sufficient to bring Plaintiff's claims within the scope of the FLSA and Connecticut's wage and hour laws.

    d.  <u>Damages</u>

        1.  Minimum Wage Violations

Both the FLSA and Connecticut wage laws require an employer to pay its employee a minimum wage for every hour worked.  *See* 29 U.S.C. §(a)(1); Conn. Gen. Stat. § 31-58(i).  Where state law affords a higher minimum wage than federal law, it is state law that control's an employer's duty.  *See Lanzetta v. Florio's Enterprises, Inc.*, No. 08 CIV. 6181 DC, 2011 WL 3209521, at *2 (S.D.N.Y. July 27, 2011) (collecting cases). Moreover, a plaintiff may not recover unpaid minimum wages under both state and federal law.[10]  *Fuk Lin Pau v. Jian Le Chen*, No. 3:14CV841(JBA), 2015 WL 6386508, at *8 (D. Conn. Oct. 21, 2015).

Here, Plaintiff states that he worked for Burtis Nail from January 2, 2018, to September 18, 2018, and for Sarah Nail from March 12, 2019, through July 21, 2019. During these periods, the prevailing federal minimum wage was $7.25 while the state minimum wage was $10.10.  *See* Conn. Gen. Stat. § 31-58(i)(1) (setting minimum wage

---

[10] The complaint seeks to recover for minimum wage violations arising only under state law.  Compl. at Count One.

of $10.10 from January 1, 2017, through September 30, 2019).[11]   Thus, the court will calculate any backpay on the basis of the higher state minimum wage.

Plaintiff alleges that he was paid $90 per day for his work at Burtis Nail.  Plaintiff worked, on average, 6.3 days per week for both nail salons.[12]   For the first 12 weeks at Burtis Nail (between January 2, 2018, and March 31, 2018), Plaintiff received $567 per week ($90 multiplied by 6.3), and he averaged 60.55 hours per week.[13]   *See* Ex. 1 at 2, ECF No. 110-1 [hereinafter "Damages Calculation"].  This means that during his first twelve weeks at Burtis Nail he earned $9.36 per hour, which is below the statutory minimum wage of $10.10 per hour.  Thus, Plaintiff had a minimum wage shortfall of $29.60 per week.[14]

Beginning on April 1, 2018, Plaintiff began driving employees from New York to Connecticut and was compensated at a rate of $122.50 per week.[15]   Thus, between April

---

[11] In his affidavit, Plaintiff states, "My attorney explained to me that from January 01, 2019, the Connecticut Minimum Wage Rate was ($11.00) per hour."  Pl.'s Aff. ¶ 36. However, Connecticut's minimum wage was $10.10 as of January 1, 2017, and it did not increase to $11.00 until October 1, 2019 (which is after the end of his employment by Defendants).  *See* Conn. Gen. Stat. § 31-58(i)(1).  Plaintiff's revised damages calculation appears to use the proper rate of $10.10 for all relevant periods. Ex. 1, ECF No. 110-1.

[12] In his affidavit, Plaintiff is forced to refer to average days worked because Defendants "failed to keep full and accurate records of Plaintiff's hours and wages," nor did they ever provide him with a paystub.  Pl.'s Aff. ¶ 29.  Plaintiff states that at Burtis Nail, he worked 5 days per week ten percent of the time, 6 days per week fifty percent of the time, and 7 days per week forty percent of the time.  *Id.* ¶¶ 12–14.  He states the same distribution of time at Sarah Nail. Accordingly, the average number of days worked per week for both nail salons is 6.3 days, and is calculated by averaging the distribution (i.e. (5*.1)+(6*.5)+(7*.4)).  The court finds Plaintiff's method for determining the average hours and days worked to be reasonable.

[13] Specifically, Plaintiff states that between January 2, 2018, and March 21, 2018, he worked 49 hours per week ten percent of the time; 57.5 hours per week fifty percent of the time; and 67.25 hours per week forty percent of the time.  *Id.* ¶ 12.  Accordingly, the average number of hours worked per week is 60.55 hours, and is calculated by averaging the distribution (i.e. (49*.1)+(57.5*.5)+(67.25*.4)).

[14] The minimum wage shortfall is calculated by multiplying the difference between the minimum wage ($10.10) and Plaintiff's actual hourly rate ($9.36), which is $0.74, by the 40-hour work week.

[15] Plaintiff was paid $35 per day for his driving services, and he estimates that he drove three or four days per week. Pl.'s Aff. ¶¶ 26–27. Assuming 3.5 days of driving, as used in the damages calculation provided to the court, Plaintiff would have earned $122.50 per week (i.e. $35*3.5).

1, 2018, and September 18, 2018, Plaintiff earned approximately $689.50 per week (i.e., $567 for nail work plus $140 for driving).  During this time, Plaintiff worked approximately 68.80 hours per week.  *See* Damages Calculation at 2.  This means that between April 1, 2018, and September 18, 2018, Plaintiff earned $10.02 per hour at Burtis Nail, which is below the minimum wage of $10.10 per hour.  Thus, Plaintiff had a minimum wage shortfall of $3.20 per week.[16]

With respect to Sarah Nail, Plaintiff alleges that he was paid $100 for his nail work and $35 for his driving services between March 12, 2019, and June 30, 2019.  Plaintiff estimates that he worked approximately the same schedule as Burtis Nail: 6.3 days per week for nail work, and 3.5 days per week for driving services.  Accordingly, Plaintiff earned approximately $752.50 per week for his work at Sarah Nail during this period.  Beginning July 1, Plaintiff received a raise for his nail work from $100 to $120 per day.  Plaintiff continued his nail work and his driving services until July 21, 2019.  Thus, between July 1, 2019, and July 21, 2019, Plaintiff earned 878.50 per week.  Plaintiff estimates that he worked 68.80 hours per week for the entire time that he worked at Sarah Nail.  *See* Damages Calculation at 2.  This means that Plaintiff earned $10.94 per hour between March 12, 2019, and June 30, 2019, and $12.77 per hour between July 1, 2019, and July 21, 2019.  Both of Plaintiff's hourly rates at Sarah Nail are above the prevailing state minimum wage of $10.10.  To the extent that Plaintiff seeks to recover for a minimum wage violation arising from his work performed at Sarah Nail, such claim is dismissed.[17]

---

[16] The minimum wage shortfall is calculated by multiplying the difference between the minimum wage ($10.10) and Plaintiff's actual hourly rate ($10.02), which is $0.08, by the 40-hour work week.

[17] The damages calculation submitted by Plaintiff indicates a blank mark (" – ") under the box entitled "Minimum Wage Short-fall per week" for the time period relevant to Sarah Nail. Damages Calculation at 3, ECF No. 110-1. Thus, Plaintiff appears to admit in this exhibit that there is no recovery available for a minimum wage claim as to Sarah Nail. However, the brief in support of his motion states that "he was not

The court finds that Plaintiff is entitled to $449.79 as damages for a minimum wage violation under state law, as calculated in the table below:

| | | A | B | C | D | E | F | G | H |
|---|---|---|---|---|---|---|---|---|---|
| **Minimum Wage Shortfall** | | | | | | | | | |
| **Place** | **Time Period** | **Regular Overtime Rate** | **Minimum Wage** | **Min. Wage Shortfall (C-B)** | **Min. Wage Weekly Hours** | **Min. Wage Weekly Shortfall (D*E)** | **Weeks in Period** | **Total Min. Wage Shortfall (F*G)** |
| Burtis Nail | Jan. 2, 2018 to Mar. 31, 2018 | $ 9.36 | $ 10.10 | $ 0.74 | 40 | $ 29.60 | 12.57 | $ 372.07 |
| Burtis Nail | Apr. 1, 2018 to Sept. 18, 2018 | $ 10.02 | $ 10.10 | $ 0.08 | 40 | $ 3.20 | 24.29 | $77.72 |
| Sarah Nail | Mar. 12, 2019 to Jun. 30, 2019 | $ 10.94 | $ 10.10 | N/A | N/A | N/A | N/A | N/A |
| Sarah Nail | Jul. 1, 2019 to Jul. 21, 2019 | $ 12.77 | $ 10.10 | N/A | N/A | N/A | N/A | N/A |
| **Total** | | | | | | | | **$449.79** |

### 2. Overtime Violations

Both the FLSA and Connecticut state law guarantee workers overtime pay of at least one and one-half times their "regular rate" for every hour over 40 worked per week. 29 U.S.C. § 207(a); Conn. Gen. Stat. § 31–76(c).  Under the FLSA, the "regular rate" of pay is "the hourly rate *actually paid* [to] the employee for the normal, non-overtime workweek for which he is employed." *Grochowski v. Phoenix Const.*, 318 F.3d 80, 87 (2d Cir. 2003) (citing *Walling v. Youngerman–Reynolds Hardwood Co.,* 325 U.S. 419 (1945)). Similarly, the "regular rate" under state law refers to an employee's hourly wage. *Williams*, 326 Conn. at 653.  "Unlike the minimum wage provisions of the FLSA, the regulations governing the overtime provisions of the Act expressly incorporate the state

---

paid at an hourly minimum wage rate . . . for *any* hours worked."  Pl.'s Mem. of Law at 11, ECF No. 101 (emphasis added).  Regardless, the figures presented demonstrate a failure to state a claim for any minimum wage violation as to Sarah Nail.

minimum wage." *Fuk Lin Pau v. Jian Le Chen*, No. 3:14CV841(JBA), 2015 WL 6386508, at *8 (D. Conn. Oct. 21, 2015) (citing 29 C.F.R. 778.5). Specifically, the federal overtime regulation clarifies that "the regular rate" referenced in the FLSA's overtime provisions may not be less than any "higher minimum wage" set by legislation other than the FLSA. 29 C.F.R. 778.5. Thus, as with violations for minimum wage laws, a plaintiff may not recover backpay for unpaid overtime under both the FLSA and state law. *See Hengjin Sun v. China 1221, Inc.,* No. 12-CV-7135 (RJS), 2016 WL 1587242, at *2 (S.D.N.Y. Apr. 19, 2016) ("The law in this Circuit is clear: 'Obviously, plaintiffs are not entitled to recover twice' under both the FLSA and [state law] 'for the same injury.'"). Plaintiff's complaint seeks to recover overtime under both the FLSA and state law in Counts Two and Three of his complaint. At the default judgment hearing Plaintiff conceded that he is seeking damages for unpaid overtime only under state law, and not the FLSA. In light of the rule against double recovery, and Plaintiff's concession, Count Two of the complaint, which seeks overtime recovery under the FLSA, hereby is **<u>DISMISSED</u>.**

Plaintiff's hourly rates for Burtis Nail and Sarah Nail, calculated above, are as follows: $9.36 per hour at Burtis Nail between January 2, 2018, and March 30, 2018; $10.02 per hour at Burtis Nail between April 1, 2018, and September 18, 2018; $10.94 per hour at Sarah Nail between March 12, 2019, and June 30, 2019; and $12.77 per hour at Sarah Nail between July 1, 2019, and July 21, 2019. Plaintiff is entitled to a regular rate of the prevailing state minimum wage at the time ($10.10) for any period of time in which he was paid below minimum wage. Thus, Plaintiff should have been paid at the following time-and-a-half rates: $15.15 per hour; $15.03 per hour; $16.41, and $19.15 per hour. Plaintiff indicates that he was not paid overtime pay for any hours worked over forty

hours per week.  Pl.'s Aff. ¶ 28.  Thus, where Plaintiff was paid only his hourly rate for

hours worked above forty hours, he is entitled to recover $8,026.15 in unpaid overtime,

as calculated below:

| | | A | B | C | D | E | F | G | H | I |
|---|---|---|---|---|---|---|---|---|---|---|
| **Overtime Wage Shortfall** | | | | | | | | | | |
| Place | Time Period | Regular Overtime ("OT") Rate | ("Time and a half") OT Rate | OT Short-fall (C-B) | Avg. Hrs. Worked Per Wk. | Hours Over 40 Worked (E–40) | Weekly OT Shortfall (F*D) | Weeks in Period | Total Overtime Shortfall (G*H) |
| Burtis Nail | Jan. 2, 2018 to Mar. 30, 2018 | $ 9.36 | $15.15 | $ 5.79 | 60.55 | 20.550 | $ 118.98 | 12.57 | $1,495.57 |
| Burtis Nail | Apr. 1, 2018 to Sept. 18, 2018 | $ 10.02 | $15.03 | $ 5.01 | 68.80 | 28.800 | $ 144.28 | 24.29 | $3,504.56 |
| Sarah Nail | Mar. 12, 2019 to Jun. 30, 2019 | $ 10.94 | $16.41 | $ 5.47 | 68.80 | 28.800 | $ 157.53 | 15.71 | $2,474.79 |
| Sarah Nail | Jul. 1, 2019 to Jul. 21, 2019 | $ 12.77 | $19.15 | $ 6.38 | 68.80 | 28.800 | $ 183.74 | 3 | $551.22 |
| Total | | | | | | | | | **$ 8,026.15** |

### 3.  Liquidated damages

Both the FLSA and Connecticut law permit Plaintiff to recover liquidated damages

for unpaid wages and overtime.  *See* 29 U.S.C. § 216(b); Conn. Gen. Stat. § 31-68(a).

Under the FLSA, "[d]ouble damages are the norm, single damages the exception." *Reich*

*v. S. New England Telecommunications Corp.*, 121 F.3d 58, 71 (2d Cir. 1997) (quoting

*Brock v. Wilamowsky,* 833 F.2d 11, 19 (2d Cir. 1987)).  "Courts have the discretion not to

award liquidated damages "if the employer shows to the satisfaction of the court that the

act or omission giving rise to such action was in good faith and that he had reasonable

grounds for believing that his act or omission was not a violation of the [FLSA]." *Morales*

*v. Cancun Charlie's Rest.*, No. 3:07-CV-1836 CFD, 2010 WL 7865081, at *8 (D. Conn.

Nov. 23, 2010) (citing 29 U.S.C. § 260).  Good faith is not an issue where, as here, Defendants have defaulted.  *See Tapia v. Mateo*, 96 F. Supp. 3d 1, 5 (D. Conn. 2015) (noting that where defendants have defaulted, they cannot make a showing of good faith).

Under Connecticut law, an employee may recover "twice the full amount of such minimum wage or overtime wage less any amount actually paid to him or her by the employer[.]"  Conn. Gen. Stat. § 31-68(a)(1).  Courts are divided on whether a plaintiff may recover cumulative awards under both federal and state statutes.  *See Andrade v. Kwon*, No. 3:08CV479 SRU, 2012 WL 3059616, at *6 (D. Conn. Mar. 26, 2012) (permitting plaintiff to recover an award under only one statute because the FLSA and the Connecticut state law do not "serve fundamentally different purposes"); *but see Morales*, No. 3:07-CV-1836 CFD, 2010 WL 7865081, at *9 (D. Conn. Nov. 23, 2010) (awarding liquidated damages simultaneously under the FLSA and applicable state statute where they serve different purposes).  Here, Plaintiff represented at his default judgment hearing that he seeks liquidated damages only under state law.  Accordingly, the court hereby awards Plaintiff liquidated damages in the amount of $8,475.94 (consisting of $449.79 in unpaid minimum wage and $8,026.15 in unpaid overtime).

### 4. Prejudgment Interest

Plaintiff also seeks prejudgment interest under Conn. Gen. Stat. § 37-3, which provides that "interest at the rate of ten per cent a year, and no more, may be recovered and allowed in civil actions . . . as damages for the detention of money after it becomes payable."  Courts in this district have routinely awarded prejudgment interest on awards arising under Connecticut wage and hour laws.  *See, e.g. Wei v. Sichuan Pepper, Inc.*, No. 3:19-CV-00525 (JBA), 2022 WL 385226, at *14 (D. Conn. Jan. 17, 2022) (citing

*Strauch v. Computer Sciences Corp.*, No. 3:14-CV-956 (JBA), 2018 WL 5870337, at *7 (D. Conn. Nov. 9, 2018)), *R. &R. adopted*, No. 3:19-CV-525 (JBA), 2022 WL 382019 (D. Conn. Feb. 7, 2022).

To recover prejudgment interest, a plaintiff assumes the burden of proving that the retention of the money was wrongful under the circumstances. *Cecio Bros. v. Feldmann*, 161 Conn. 265, 274 (1971). Here, on default, improper retention is not at issue, and the court only must determine when it began in order to calculate interest. *Sears Roebuck & Co. v. Bd. of Tax Rev. of the Town of W. Hartford*, 241 Conn. 749, 763 (1997) (noting two-step procedural requirement for obtaining prejudgment interest under § 37-3a). Because "calculating prejudgment interests in wage cases can be complicated, courts often employ the expedient of calculating interest on the entire sum from the midpoint of the relevant date range to the date that judgment will likely enter." *Tahirou v. New Horizon Enterprises, LLC*, No. 3:20-CV-00281 (SVN), 2022 WL 510044, at *14 (D. Conn. Feb. 21, 2022); *see also Hernandez*, 2013 WL 5129815, at *7 ("Simple prejudgment interest is calculated by multiplying the principal by the interest rate by the time period (the midpoint of employment until and including the date of entry of judgment).").

The court finds it reasonable to calculate prejudgment interest from the midpoint date between the first and last days of each period of Plaintiff's employment. Plaintiff worked at Burtis Nail from January 2, 2018, to September 18, 2018. The midpoint date is May 11, 2018. Plaintiff's wages withheld for his work at Burtis Nail is $5,449.92 ($449.79 in unpaid minimum wage and $5,000.13 in unpaid overtime). Thus, Plaintiff is entitled to prejudgment interest on $5,449.92 at a rate of 10% per day for each day from

May 11, 2018, to the date judgment is entered.  Since $5,449.92 divided by 365 is approximately $14.93, this results in $1.49 of daily prejudgment interest.

Plaintiff worked at Sarah Nail from March 12, 2019, through July 21, 2019. The midpoint date is May 16, 2019. Plaintiff's withheld wages for his work at Sarah Nail amount to $3,026.02 in unpaid overtime. Thus, Plaintiff is entitled to prejudgment interest on $3,026.02 at a rate of 10% per day for each day between May 16, 2019, and the date judgment is entered.  Since $3,026.02 divided by 365 is approximately $8.29, this results in $0.83 in daily prejudgment interest.

Accordingly, the Clerk of Court shall please calculate at the time of judgment the final prejudgment amount ($1.49 per day from May 11, 2018, to the date of judgment plus $0.83 per day from May 16, 2019, to the date judgment is entered).

5.  Attorney's Fees

Plaintiff seeks a fee award of $78,069.97 representing $76,601.50 in attorneys' fees and $1,468.47 in costs incurred by Plaintiff's counsel, Troy Law, PLLC.  For the reasons stated below, the court hereby issues a fee award of $37,019.70.

i.  Legal Standards

"It is the general rule in the United States that in the absence of legislation providing otherwise, litigants must pay their own attorney's fees."  *Christiansburg Garment Co. v. Equal Emp. Opportunity Comm'n*, 434 U.S. 412, 415 (1978).  There are exceptions however, under both the FLSA and Connecticut wage laws, which allow a successful plaintiff to recover "reasonable" attorneys' fees.  *See* 29 U.S.C. § 216(b) (providing that, in addition to the judgment award, the court "shall … allow a reasonable attorney's fee to be paid by the defendant, and costs of the action"); Conn. Gen. Stat. § 31-68(a) ("any

employee [who] is paid . . . less than the minimum fair wage or overtime . . . shall recover . . . costs and such reasonable attorney's fees as may be allowed by the court[.]").  In light of Defendants' default, including liability under both state and federal wage and hour laws, the court finds that Plaintiff is entitled to reasonable attorneys' fees and costs.

"As a general matter, the starting point in analyzing whether claimed attorneys' fees are appropriate is the lodestar[.]"  *Yuajian Lin v. La Vie en Schezuan Rest. Corp.*, No. 15-cv-09507 (DF), 2020 WL 1819941, at *2 (S.D.N.Y. Apr. 9, 2020) (citing *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011)).  The "lodestar" refers to "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."  *Healey v. Leavitt*, 485 F.3d 63, 71 (2d Cir. 2007) (quoting *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983)).

The first factor in the lodestar calculation is the reasonable hourly rate, or "the rate a paying client would be willing to pay."  *Wei*, 2022 WL 385226, at *15 (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)).  In determining this rate, the district court should consider factors including, but not limited to, "the complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively (taking account of the resources being marshaled on the other side but not endorsing scorched earth tactics), the timing demands of the case, whether an attorney might have an interest (independent of that of his client) in achieving the ends of the litigation or might initiate the representation himself, whether an attorney might have initially acted *pro bono* (such that a client might be aware that the attorney expected low or non-existent remuneration), and other returns (such as reputation, etc.) that an attorney might expect from the

representation." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elections*, 522 F.3d 182, 184 (2d Cir. 2008).

The second lodestar factor is the reasonable number of hours required by the case. "In determining whether an excessive amount of time was expended on the matter, the Court may consider, *inter alia*, the nature and quality of the work submitted by counsel in connection with the litigation, and whether the work was complicated or straightforward." *Yuajian Lin*, 2020 WL 1819941.

    ii.    Reasonable Rates

In support of the application for attorney's fees, Plaintiff submits contemporaneous time records maintained throughout the pendency of the suit (ECF No. 110-2), and an affidavit from Attorney John Troy as the managing principal of Troy Law, PLLC ("Troy Law"): (ECF No. 110). Plaintiff seeks to recover fees at the following rates: Attorney John Troy at a partner rate of $650 per hour; Attorney Aaron Schweitzer at a senior associate rate of $400 per hour; Attorney Tiffany Troy at junior associate rates of $250 per hour and $150 per hour; and Preethi Kilaru, a managing clerk, at a rate of $200 per hour.

Troy Law "spearheads the nation's wage and hour employment litigation advocacy" and has one of the largest client bases among the Asian-American and Latinx-American, among others, immigrant worker communities." Troy Aff ¶ 23, ECF No. 110. Attorney John Troy is the attorney of record on hundreds of wage-and-hour matters pending in federal courts throughout the country. *Id.* ¶¶ 24–26 (noting appearance in 176 wage-and-hour matters in the Eastern District of New York; 206 wage-and-hour matters in the Southern District of New York; and 40 wage-and-hour matters across districts

courts in New York; Connecticut; Massachusetts; Minnesota; Pennsylvania; West Virginia; and Illinois).

Notwithstanding the substantial legal experience of Troy Law, "district courts have generally declined to accept Troy Law's requested rates." *Wei*, 2022 WL 385226, at *17 (citing cases and reducing each attorney's requested rate). Only one state court has ever awarded Attorney John Troy a rate of $650 per hour. Troy Aff. ¶ 34, ECF No. 110 (citing *Blanca Sagbaciela v. Ruby Nail Tarrytown, Inc.*, Index No. 53960/2021 (N.Y. Sup. Ct. Feb. 27, 2023) (oral ruling)). Instead, courts in this district generally approve hourly rates between $300 and $400 for experienced partner-level attorneys in employment law cases. *Faniel v. PAFY, Inc.*, No. 3:20-CV-00387 (VLB), 2022 WL 1212813, at *8 (D. Conn. Feb. 14, 2022), *R. & R. adopted*, No. 3:20-CV-00387 (VLB), 2022 WL 2287599 (D. Conn. May 4, 2022). In a recent wage and hour case that also concluded by way of default judgment, the court granted Attorney Troy a rate of $375 per hour. *Wei*, 2022 WL 385226, at *17. Recent cases from outside this district likewise have awarded Attorney Troy between $300 and $550 per hour. *See Cindy Chen v. Shanghai Café Deluxe, Inc. D/B/A Shanghai Cafe*, No. 16-CV-4790 (VF), 2023 WL 2401376, at *16 (S.D.N.Y. Mar. 8, 2023) (awarding a rate of $300 per hour); *Zang v. Daxi Sichuan, Inc.*, No. 18-CV-06910-DG-SJB, 2023 WL 2305934, at *4 (E.D.N.Y. Mar. 1, 2023) (awarding a rate of $350 per hour); *Wang v. Yong Lee Inc.*, No. 17-CV-9582 (JPO), 2022 WL 17756593, at *2 (S.D.N.Y. Dec. 19, 2022) (awarding a rate of $550).

The court finds it appropriate to reduce the requested rates in this case. In doing so, the court bears in mind "what a paying client would be willing to pay." *Arbor Hill I,* 493 F.3d at 117-18. It is unreasonable to presume that a client would pay $650 per hour for

the legal work actually provided in this case.  *See  Garcia v. Francis Gen. Constr. Inc.*, No. 20 CIV. 4323 (JPC), 2022 WL 2698434, at *8 (S.D.N.Y. July 12, 2022) (reducing rates "given counsel's performance in this case").  Plaintiff's pleadings and briefs contain typographical errors, inconsistencies, and, most importantly, legal errors that suggest an inattention to detail that falls far short of the exceedingly high billable rates requested. For example, Troy Law originally submitted a default judgment motion that erroneously inflated Plaintiff's damages by over $35,000.  *Compare* Damages Calculation, ECF No. 100-7 (calculating total damages in the amount of $57,198.03), *with* Revised Damages Calculation, ECF No. 110-1 (correcting total damages to $20,267.84).  It was not until the court highlighted the basic computational error for overtime damages at the default judgment hearing that Troy Law submitted a revised damages calculation.  Moreover, Plaintiff's affidavit indicates that he has been given incorrect legal advice as to the prevailing minimum wage rate governing his claims.  *Compare* Pl.'s Aff. ¶ 36 ("[m]y attorney explained to me that from January 01, 2019, the Connecticut Minimum Wage Rate was ($11.00) per hour."*), with* Conn. Gen. Stat. § 31-58(i)(1) (setting state minimum wage rate of $10.10 per hour effective January 1, 2017, to October 1, 2019).  Lastly, on at least two occasions, the court has had to request revised briefing in order to address deficiencies in Plaintiff's work product.  Plaintiff originally filed the default judgment motion on March 14, 2022.  The court (*Hon. Merriam, J.*) was forced to deny the motion without prejudice because the briefing failed to provide an adequate evidentiary basis for the damages claimed.  ECF No. 94. The briefs also contained inconsistencies between Plaintiff's affidavit and the attorney-drafted damages spreadsheet.  *Id.* at 7 n.1.  As to the instant motion, Troy Law did not submit any arguments supporting the reasonableness of

the requested attorney's fees until the court ordered supplemental briefing. *See* Mem. of Law, ECF No. 101. Given counsel's performance, the court finds it appropriate to reduce Attorney John Troy's rate to $375 per hour.

The court next turns to the two associates assigned to the case: Attorney Aaron Schweitzer and Attorney Tiffany Troy. Attorney Schweitzer was admitted to the bar in 2017 after graduating from Fordham University School of Law. Troy Aff. ¶¶ 37–38, ECF No. 110. Recent cases have awarded Attorney Schweitzer between $150 to $175 per hour. *See Cindy Chen*, 2023 WL 2401376, at *16 (awarding a rate of $150 per hour); *Zang*, 2023 WL 2305934, at *4 awarding a rate of $150 per hour); *Wei*, 2022 WL 385226, at *18 ("[T]he available authorities suggest that $175 per hour is a reasonable rate for an employment law associate with Attorney Schweitzer's experience."). Attorney Schweitzer tries approximately ten FLSA cases each year, has obtained favorable results as a first-chair trial attorney, and has appeared in over 180 wage and hour cases in federal court. *Id.* ¶¶ 43–49. Given the experience that Attorney Schweitzer has obtained in rising from a junior to senior associate, while keeping in mind the considerations noted above, the court hereby reduces his rate to $200.

Attorney Tiffany Troy graduated from Fordham University School of Law, and was admitted to the bar in 2021. *Id.* ¶¶ 56–57. She interned at the United States Attorney's Office in the Eastern District of New York, and practices in the firm's general civil litigation group. *Id.* ¶¶ 61–62. Given her recent admission to the bar, and her joining the firm as an associate, the court finds it appropriate to award a rate of $150 per hour for all work, including travel time. *See id.* ¶ 69 (requesting rate of $250 and $150 for travel time).

Finally, Preethi Kilaru, the managing clerk at Troy Law, requests a rate of $200. *Id.* ¶ 55. Ms. Kilaru holds her LLM from SMU Dedman School of Law and graduated from Karnataka State Law University in Karnataka, India. *Id.* ¶ 52. A review of the invoice reveals that Ms. Kilaru's work in this case has mirrored the work of a paralegal, rather than an associate. Ex. 2, ECF No. 110-2 (Troy Law Invoice). Accordingly, as in other cases, the court reduces the rate for Ms. Kilaru to $140 as "the appropriate hourly rate for paralegal work in this district." *Wei,* 2022 WL 385226, at *18.

  iii. Reasonable Hours

In addition to evaluating reasonable rates, a court must determine whether the hours claimed by the prevailing side were "reasonably expended." *Holick v. Cellular Sales of N.Y., LLC*, 48 F.4th 101, 106 (2d Cir. 2022) (citation omitted). "[A] trial court may reduce the claimed hours and, accordingly, counsel's award, where proposed billing schedules are unsupported by evidence or objectively unreasonable." *John v. DeMaio*, No. 15-CV-6094, 2016 WL 7469862, at *8 (E.D.N.Y. Sept. 29, 2016).

Per his affidavit, Attorney Troy represents that the firm spent a total of 145.34 hours on this case. Troy Aff. ¶ 70, ECF No. 110. He spent 94.03 hours on the case himself, while Attorney Schweitzer spent 24.41 hours, Attorney Tiffany Troy spent 16.42 hours, and Ms. Kilaru spent 10.48 hours on the case. *Id.* Courts repeatedly have informed Attorney John Troy that "[a]s the most experienced attorney with the highest billable rate, John Troy should not have been the one to perform the majority of the work in this matter." *Singh v. Meadow Hill Mobile Inc.*, No. 20-Civ.-3853 (CS) (AEK), 2021 WL 3862665, at *17 (S.D.N.Y. Aug. 9, 2021); *Wei,* 2022 WL 385226, at *18 (noting that Attorney Troy personally performed tasks that should have been delegated to associates or paralegals).

Like in *Singh* and *Wei*, the invoice reflects that Attorney Troy did a substantial portion of work in this case. However, much of the work could have been performed by a senior or a junior associate (affording them valuable experience). For example, the invoice lists time billed for filing court papers, drafting motions for extensions of time, printing and mailing discovery, and drafting discovery requests and motions. Where the court finds that time expended by counsel was excessive, percentage reductions may be utilized to evaluate the appropriate fee award. *McDonald ex rel. Prendergast v. Pension Plan of the NYSA-ILA Pension Tr. Fund*, 450 F.3d 91, 96 (2d Cir. 2006) ("A district court may ... use a percentage deduction as a practical means of trimming fat."). The court finds it appropriate to reduce Attorney Troy's hours by 20%. The remaining hours spent on the case is reasonable for the efforts required by counsel. This case is not a routine default judgment. Defendants appeared in the action, participated in discovery, and were defaulted only after their counsel withdrew and they failed to comply with subsequent court orders. Accordingly, with the reduced rates and reduction in hours, the court hereby issues an award of attorney's fees as follows:

| Name | Hourly Rate | Hours Billed | Total |
|------|-------------|--------------|-------|
| John Troy | $375 | 75.22 | $ 28,207.50 |
| Andrew Schweitzer | $200 | 24.41 | $ 4,882.00 |
| Tiffany Troy | $150 | 16.42 | $ 2,463.00 |
| Preethi Kilaru | $140 | 10.48 | $ 1,467.20 |
| | | | **$ 37,019.70** |

iv.    Costs

Plaintiff also seeks an award of costs incurred by Troy Law.  An award of attorney's fees may include "those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998).  Plaintiff seeks $1,468.47 in costs, including the filing fee, service, mediation fees, and travel fees.  The court finds this to be reasonable.

## IV.    CONCLUSION

The court hereby awards Plaintiff a total default judgment to be calculated by the Clerk of Court, as indicated in the table below.

| Damages | Total |
|---|---|
| Unpaid Wages (minimum wage & overtime) | $ 8,475.94 |
| Liquidated Damages | $ 8,475.94 |
| Prejudgment Interest | $ 1.49 for each day from May 11, 2018, to the date judgment is entered |
| | $ .83 for each day from May 21, 2019, to the date judgment is entered |
| Attorneys' Fees | $ 37,019.70 |
| Costs | $ 1,468.47 |

**IT IS SO ORDERED.**  Entered at Hartford, Connecticut, this 26th day of June, 2023.

_____/s/_____
OMAR A. WILLIAMS
United States District Judge